UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------x
:
In re: PETROBRAS SECURITIES          :          14-cv-9662 (JSR)
LITIGATION                           :
:          MEMORANDUM ORDER
This Document Applies to:            :
:
Dimensional Emerging Markets         :
Value Fund, et al. v. Petróleo       :
Brasileiro S.A – Petrobras,          :
No. 15-cv-2165 (JSR)                 :
:
Skagen, et al. v. Petróleo           :
Brasileiro S.A. – Petrobras,         :
et al., No. 15-cv-2214 (JSR)         :
:
New York City Employees'             :
Retirement System, et al.            :
v. Petróleo Brasileiro S.A.          :
– Petrobras, et al.,                 :
No. 15-cv-2192 (JSR)                 :
:
Transamerica Income Shares,          :
Inc., et al. v. Petróleo             :
Brasileiro S.A. – Petrobras,         :
et al., No. 15-cv-3733 (JSR)         :
:
Aberdeen Emerging Markets Fund,      :
et al. v. Petróleo Brasileiro S.A.   :
– Petrobras, No. 15-cv-3860 (JSR)    :
:
Ohio Public Employees Retirement     :
System v. Petróleo Brasileiro S.A.   :
– Petrobras, et al.,                 :
No. 15-cv-3887 (JSR)                 :
:
Central States Southeast and         :
Southwest Areas Pension Fund v.      :
Petróleo Brasileiro S.A. –           :
Petrobras, et al.,                   :
No. 15-cv-3911 (JSR)                 :
:
Washington State Investment Board    :
v. Petróleo Brasileiro S.A. –        :
Petrobras, et al.,                   :



1

No. 15-cv-3923 (JSR)          :
                              :
Aberdeen Latin American Income :
Fund Limited, et al. v. Petróleo :
Brasileiro S.A. – Petrobras,  :
No. 15-cv-4043 (JSR)          :
                              :
NN Investment Partners B.V.,  :
et al. v. Petróleo Brasileiro S.A. :
– Petrobras, et al.,          :
No. 15-cv-4226 (JSR)          :
                              :
Aura Capital Ltd. v. Petróleo :
Brasileiro S.A. – Petrobras,  :
 et al., No. 15-cv-4951 (JSR) :
                              :
----------------------------------x

JED S. RAKOFF, U.S.D.J.

        Plaintiffs bring the above-captioned individual but related

actions against defendant Petróleo Brasileiro S.A. – Petrobras

("Petrobras") and related individuals and entities. Plaintiffs

allege that Petrobras was at the center of a multi-year, multi-

billion dollar bribery and kickback scheme, in connection with

which defendants made false and misleading statements in

violation of the Securities Act of 1933 (the "Securities Act"),

the Securities Exchange Act of 1934 (the "Exchange Act"), state

law, and Brazilian law. The allegations in these individual

actions are substantially similar to the allegations in the

related class action, In re Petrobras Securities Litigation, No.

14-cv-9662, the details of which are set forth in In re

Petrobras Securities Litigation, 2015 WL 4557364 (S.D.N.Y. July

30, 2015), familiarity with which is here presumed.

2

On August 21, 2015, defendants moved to dismiss the above-captioned individual actions. After full briefing, the Court, by bottom-line Order dated October 19, 2015, (the "October 19 Order") granted in part and denied in part defendants' motion. This Memorandum Order sets forth the reasons for the Court's October 19 Order and in a few minor respects adds to that Order.

First, the October 19 Order denied defendants' motion to dismiss, on grounds of lack of standing, the claims of the plaintiffs in Aura Capital Ltd. v. Petróleo Brasileiro S.A. – Petrobras, et al., No. 15-cv-4951; Dimensional Emerging Markets Value Fund, et al. v. Petróleo Brasileiro S.A – Petrobras, No. 15-cv-2165; and NN Investment Partners B.V., et al. v. Petróleo Brasileiro S.A. – Petrobras, et al., No. 15-cv-4226. The plaintiffs in those cases are suing on behalf of others and have not personally suffered injuries. However, the Supreme Court has held that an assignee of a claim has standing to pursue that claim. Sprint Communications Co., L.P. v. APCC Services, Inc., 554 U.S. 269, 271 (2008). Aura Capital Limited ("Aura"), the plaintiff in Aura Capital Ltd. v. Petróleo Brasileiro S.A. – Petrobras, et al., No. 15-cv-4951, alleged that it brought claims "through a valid legal assignment" of the claims of two investors who purchased Petrobras American Depositary Shares ("ADSs"). See Complaint in Aura Capital Ltd. v. Petróleo Brasileiro S.A. – Petrobras, et al., No. 15-cv-4951, ECF No. 1,

¶ 36. Aura also submitted copies of the alleged assignments. See
Declaration of Matthew L. Mustokoff dated Sept. 18, 2015, No.
14-cv-9662, ECF No. 214, Ex. A, Ex. B. Defendants objected that
the alleged assignments failed to identify the relevant
securities with specificity, did not include explanations and
were signed only by the assignors. At this stage, defendants'
objections fall short: the assignments do refer to Petrobras
securities and are facially valid. Id. Accordingly, the October
19 Order denied defendants' motion to dismiss Aura's claims for
lack of standing.

The plaintiffs in Dimensional Emerging Markets Value Fund,
et al. v. Petróleo Brasileiro S.A – Petrobras, No. 15-cv-2165,
and NN Investment Partners B.V., et al. v. Petróleo Brasileiro
S.A. – Petrobras, et al., No. 15-cv-4226, do not allege
assignments of claims. Instead, they invoke a prudential
exception to the standing requirement. "[The prudential]
exceptions permit third-party standing where the plaintiff can
demonstrate (1) a close relationship to the injured party and
(2) a barrier to the injured party's ability to assert its own
interests." W.R. Huff Management Co., LLC v. Deloitte & Touche
LLP, 549 F.3d 100, 109-10 (2d Cir. 2008) (listing examples of
close relationships, including trust-beneficiary).

To satisfy the Huff requirements, the Amended Complaint in
NN Investment Partners B.V., et al. v. Petróleo Brasileiro S.A.

4

– Petrobras, et al., No. 15-cv-4226, details the relationships
between the named plaintiffs and their funds, sub-funds, and
series, which allegedly purchased Petrobras securities. Amended
Complaint in NN Investment Partners B.V., et al. v. Petróleo
Brasileiro S.A. – Petrobras, et al., No. 15-cv-4226, ECF No. 22,
¶¶ 17-21. In particular, the Amended Complaint states for each
fund or sub-fund that the relationship between a named plaintiff
and the fund or sub-fund and is "similar to that of a trustee to
a beneficiary" and that the funds or sub-funds have no legal
personality and cannot sue on their own. Id.

Similarly, the Amended Complaint in Dimensional Emerging
Markets Value Fund, et al. v. Petróleo Brasileiro S.A –
Petrobras, No. 15-cv-2165, alleges that the funds or series that
purchased Petrobras securities lack separate legal personality,
have no employees or officers, and cannot take action, except by
and through the named plaintiffs. Amended Complaint in
Dimensional Emerging Markets Value Fund, et al. v. Petróleo
Brasileiro S.A – Petrobras, No. 15-cv-2165, ECF No. 19, ¶¶ 32-
37. There are two exceptions to these repeated allegations.
Plaintiffs do not allege that an Australian unit trust, such as
the Dimensional Emerging Markets Trust ("DEM"), does not have
legal personality; but they do allege that DEM has no employees
or officers and cannot act except by and through its single
responsible entity, named-plaintiff DFA Australia, also known as

DEM's "manager" or "trustee." Id. ¶ 34.  Likewise, the
plaintiffs do not allege that two Canadian fund trusts, the DFA
International Core Equity Fund and DFA International Vector
Equity Fund, lack legal personality; but they do allege that
these funds have no employees or officers and cannot act except
by and through their trustee, named-plaintiff Dimensional Fund
Advisors Canada ULC, which has the exclusive authority to act on
their behalf in all matters. Id. ¶ 35.

Defendants argue that these allegations are insufficient
because they are legal conclusions that need not be accepted as
true at the motion to dismiss stage. But some of plaintiffs'
legal allegations are premised on underlying allegations of
fact, such as whether a given fund has employees, which the
Court is bound to accept as true. Moreover, defendants
misunderstand what the prudential exception demands. Plaintiffs
need not plead any specific legal relationship to satisfy Huff.
Instead, the question for the Court at this stage is whether
plaintiffs' allegations, taken as true, support the legal
conclusions that (1) the named plaintiffs had "a close
relationship to the injured party and (2) a barrier [existed] to
the injured party's ability to assert its own interests." W.R.
Huff Management Co., LLC v. Deloitte & Touche LLP, 549 F.3d 100,
109 (2d Cir. 2008). Plaintiffs' allegations support these
conclusions. Accordingly, the October 19 Order denied

defendants' motion to dismiss any plaintiffs' claims on standing grounds.

Second, the October 19 Order granted defendants' motion to dismiss the Exchange Act and Securities Act claims concerning Petrobras debt securities (the "Notes") in New York City Employees' Retirement System, et al. v. Petróleo Brasileiro S.A. – Petrobras, et al., No. 15-cv-2192; Skagen, et al. v. Petróleo Brasileiro S.A. – Petrobras, et al., No. 15-cv-2214; Transamerica Income Shares, Inc., et al. v. Petróleo Brasileiro S.A. – Petrobras, et al., No. 15-cv-3733; Ohio Public Employees Retirement System v. Petróleo Brasileiro S.A. – Petrobras, et al., No. 15-cv-3887; and Washington State Investment Board v. Petróleo Brasileiro S.A. – Petrobras, et al., No. 15-cv-3923. The Court granted defendants' motion because the complaints in those cases failed to properly allege that plaintiffs purchased Notes in domestic transactions, as required by Morrison v. National Australia Bank Ltd., 561 U.S. 247 (2010). Because plaintiffs do not claim that they purchased their Notes on a domestic exchange, they can only satisfy Morrison if they plead that they "incur[red] irrevocable liability to carry out the [Notes] transaction within the United States or [that] title [to the Notes] passed within the United States." Absolute Activist Value Master Fund Ltd. v. Ficeto, 677 F.3d 60, 69 (2d Cir. 2012). Moreover, conclusory assertions that irrevocable

liability was incurred or that title passed are insufficient. The parties must allege more specific facts, "including, but not limited to, facts concerning the formation of the contracts, the placement of purchase orders, the passing of title, or the exchange of money." Id. at 70. Plaintiffs did not adequately plead such facts in their complaints.

Plaintiffs argue that their claims nonetheless satisfy Absolute Activist. To begin with, they claim they purchased Notes in initial offerings, which, they argue, must mean the Notes were purchased in the United States. However, as the Court explained in its Opinion on defendants' most recent motion to dismiss in the related class action, see Order and Opinion dated Dec. 21, 2015, ("FAC MTD Op.") at 10-11, No. 14-cv-9662, ECF No. 374, although plaintiffs cite provisions in Supplemental Prospectuses that indicate that some Notes were initially offered in the United States, the actual Supplemental Prospectuses referred to in their complaints do not state that the Notes were exclusively initially offered in the United States. See Individual Plaintiffs' Joint Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Individual Action Complaints ("P. Opp.") at 11 n.8, No. 14-cv-9662, ECF No. 213; Declaration of Matthew L. Mustokoff dated Sept. 18, 2015, No. 14-cv-9662, ECF No. 214, Ex. C, Ex. D. Indeed, the Supplemental Prospectuses imply that some underwriters did

8

initially offer the Notes outside the United States. See, e.g., id. Ex. C at S-48 ("Standard Chartered Bank will not effect any offers or sales of any notes in the United States unless it is through one or more U.S. registered broker-dealers . . . ."); id. Ex. D at S-72 ("BB Securities Ltd. is not a broker-dealer registered with the SEC and therefore may not make sales of any notes in the United States or to U.S. persons except in compliance with applicable U.S laws and regulations."). Accordingly, even if plaintiffs had adequately alleged that they purchased the Notes only in initial offerings, this alone would not be sufficient to satisfy Absolute Activist.

Plaintiffs also argue that their purchases were domestic because they settled through the Depository Trust Company ("the DTC") in New York. However, as the Court explained in the related class action, see FAC MTD Op. at 8-10, the mechanics of DTC settlement involve neither the substantive indicia of a contractual commitment necessary to satisfy Absolute Activist's first prong nor the formal weight of a transfer of title necessary for its second. Moreover, because so many securities transactions settle through the DTC or similar depository institutions, the entire thrust of Morrison and its progeny would be rendered nugatory if all DTC-settled transactions necessarily fell under the reach of the federal securities laws.

9

Accordingly, plaintiffs' DTC allegations are not sufficient to satisfy Absolute Activist.

Because plaintiffs failed to adequately allege they purchased Notes in domestic transactions, the October 19 Order dismissed their Notes claims. However, the Court granted plaintiffs leave to amend their complaints to allege facts sufficient to satisfy Absolute Activist.

Third, the October 19 Order granted defendants' motion to dismiss the claims arising under § 12(a)(2) of the Securities Act in New York City Employees' Retirement System, et al. v. Petróleo Brasileiro S.A. - Petrobras, et al., No. 15-cv-2192; Transamerica Income Shares, Inc., et al. v. Petróleo Brasileiro S.A. - Petrobras, et al., No. 15-cv-3733; Ohio Public Employees Retirement System v. Petróleo Brasileiro S.A. - Petrobras, et al., No. 15-cv-3887; and Washington State Investment Board v. Petróleo Brasileiro S.A. - Petrobras, et al., No. 15-cv-3923. To raise a § 12(a)(2) claim, a plaintiff must have purchased securities in an initial offering, not on the secondary market. See Yung v. Lee, 432 F.3d 142, 148 (2d Cir. 2005). Plaintiffs in these cases failed to adequately plead that they purchased the relevant Notes in an initial offering. It is true that some of their complaints do include conclusory allegations that they purchased in initial offerings. See, e.g., Complaint in Transamerica Income Shares, Inc., et al. v. Petróleo Brasileiro

S.A. - Petrobras, et al., No. 15-cv-3733, ECF No. 1, ¶ 406;

Complaint in Ohio Public Employees Retirement System v. Petróleo

Brasileiro S.A. - Petrobras, et al., No. 15-cv-3887, ECF No. 1,

¶¶ 14-15. But such barebones allegations are insufficient to

support plaintiffs' claims. In contrast, the plaintiffs in

Skagen, et al. v. Petróleo Brasileiro S.A. - Petrobras, et al.,

No. 15-cv-2214, alleged specific details of their Notes

purchases and attached to their Complaint transaction data

sufficient to support a plausible inference that they purchased

Notes in an initial offering on March 10, 2014. See Complaint in

Skagen, et al. v. Petróleo Brasileiro S.A. - Petrobras, et al.,

No. 15-cv-2214, ECF No. 1, ¶ 484, App. B. Several of the

plaintiffs that had not submitted such data made representations

that they could provide it. Accordingly, the October 19 Order

granted them leave to amend their complaints and dismissed their

claims without prejudice. Also, the October 19 Order denied

defendants' motion to dismiss the § 12(a)(2) claims in Skagen.

The Court also granted defendants' motion to dismiss the

§12(a)(2) claims against the Underwriter Defendants[1] in New York

---

[1] The "Underwriter Defendants" include BB Securities Ltd.;
Citigroup Global Markets Inc.; J.P. Morgan Securities LLC; Itau
BBA USA Securities, Inc.; Morgan Stanley & Co. LLC; HSBC
Securities (USA) Inc.; Mitsubishi UFJ Securities (USA), Inc.;
Merrill Lynch, Pierce, Fenner & Smith Incorporated; Standard
Chartered Bank; Bank of China (Hong Kong) Limited; Banco
Bradesco BBI S.A.; Banca IMI S.p.A.; and Scotia Capital (USA)
Inc. See, e.g., Complaint in New York City Employees' Retirement

City Employees' Retirement System, et al. v. Petróleo Brasileiro S.A. – Petrobras, et al., No. 15-cv-2192; Transamerica Income Shares, Inc., et al. v. Petróleo Brasileiro S.A. – Petrobras, et al., No. 15-cv-3733; Ohio Public Employees Retirement System v. Petróleo Brasileiro S.A. – Petrobras, et al., No. 15-cv-3887; and Washington State Investment Board v. Petróleo Brasileiro S.A. – Petrobras, et al., No. 15-cv-3923, because the plaintiffs in these cases failed to allege that the underwriters were "statutory sellers." A defendant's status as a "statutory seller" is an essential element of a § 12(a)(2) claim. In re Morgan Stanley Info. Fund Sec. Litig., 592 F.3d 347, 359 (2d Cir. 2010). To be a statutory seller, a defendant must have "(1) 'passed title, or other interest in the security, to the buyer for value,' or (2) 'successfully solicit[ed] the purchase [of a security], motivated at least in part by a desire to serve his own financial interests or those of the securities ['] owner.'" Id. (alterations in original) (quoting Pinter v. Dahl, 486 U.S. 622, 642, 647 (1988)). Moreover, to satisfy the second prong, a defendant must have successfully solicited a plaintiff's particular transaction. Capri v. Murphy, 856 F.2d 473, 478-79 (2d Cir. 1988).

---

System, et al. v. Petróleo Brasileiro S.A. – Petrobras, et al., No. 15-cv-2192, ECF No. 1, ¶¶ 44-56.

Plaintiffs failed to allege specific underwriters from whom they purchased Petrobras securities. Nonetheless, plaintiffs argue that because the Petrobras securities were offered in firm-commitment offerings, all of the underwriters are automatically statutory sellers. This logic can hold in the class action context where class plaintiffs represent all purchasers of securities in an initial offering. See Perry v. Duoyuan Printing, Inc., 2013 WL 4505199 at *12 (S.D.N.Y. Aug. 22, 2013) (collecting cases). However, in an individual action, a plaintiff must allege that a specific defendant either passed title to the plaintiff or successfully solicited the plaintiff's particular purchase of a security. See Griffin v. PaineWebber, Inc., 2001 WL 740764 at *2 (S.D.N.Y. June 29, 2001) (dismissing named plaintiff's claim against an underwriter). Even if the plaintiffs here had adequately alleged that they purchased Notes in firm-commitment initial offerings, this would be insufficient in the absence of allegations identifying the specific underwriters that passed plaintiffs title or solicited their transactions. Accordingly, the October 19 Order granted defendants' motion to dismiss the § 12(a)(2) claims against the Underwriter Defendants. However, the Court granted leave to amend with respect to this issue.

The Court also denied defendants' motion to dismiss the § 12(a)(2) claims against the Petrobras defendants on the same

13

statutory seller grounds. Defendants argued that Petrobras itself was not a statutory seller because the Notes were sold in firm-commitment offerings. However, SEC Rule 159A directly forecloses this argument. See Federal Housing Finance Agency v. UBS Americas, Inc., 858 F. Supp. 2d 306, 333 (S.D.N.Y. 2012); 17 C.F.R. § 230.159A(a) ("[I]n a primary offering of securities of the issuer, regardless of the underwriting method used to sell the issuer's securities, seller shall include the issuer of the securities sold to a person as part of the initial distribution of such securities."). Accordingly, the October 19 Order denied defendants' motion to dismiss the § 12(a)(2) claims against the Petrobras defendants on statutory seller grounds.

Fourth, the October 19 Order denied defendants' motion to dismiss plaintiffs' claims arising under § 18 of the Exchange Act on grounds that plaintiffs failed to adequately plead reliance. Actual reliance is an element of a § 18 claim, which is subject to the heightened pleading standards of Fed. R. Civ. P. 9(b). See Heit v. Weitzen, 402 F.2d 909, 916 (2d Cir. 1968); Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd., 33 F. Supp. 3d 401, 440-41 (S.D.N.Y. 2014). Each of the plaintiffs that brought § 18 claims alleged reliance on particular financial figures in Forms 20-F filed by defendants, including specific statements of the value of Petrobras' property, plant, and equipment ("PP&E") assets. See, e.g.,

14

Complaint in New York City Employees' Retirement System, et al.
v. Petróleo Brasileiro S.A. – Petrobras, et al., No. 15-cv-2192,
ECF No. 1, ¶¶ 171, 176, 190, 200, 280-86; Complaint in Skagen,
et al. v. Petróleo Brasileiro S.A. – Petrobras, et al., No. 15-
cv-2214, ECF No. 1, ¶¶ 301, 455-60; Complaint in Transamerica
Income Shares, Inc., et al. v. Petróleo Brasileiro S.A. –
Petrobras, et al., No. 15-cv-3733, ECF No. 1, ¶¶ 225, 230, 246,
256, 347-52; Aberdeen Emerging Markets Fund, et al. v. Petróleo
Brasileiro S.A. – Petrobras, No. 15-cv-3860, ECF No. 1, ¶¶ 297,
454-62; Complaint in Ohio Public Employees Retirement System v.
Petróleo Brasileiro S.A. – Petrobras, et al., No. 15-cv-3887,
ECF No. 1, ¶¶ 268, 271, 278, 284, 359-61; Complaint in Central
States Southeast and Southwest Areas Pension Fund v. Petróleo
Brasileiro S.A. – Petrobras, et al., No. 15-cv-3911, ECF No. 1,
¶¶ 295, 328, 413-17; Complaint in Washington State Investment
Board v. Petróleo Brasileiro S.A. – Petrobras, et al., No. 15-
cv-3923, ECF No. 1, ¶¶ 158, 324, 357, 442-46; Aberdeen Latin
American Income Fund Limited, et al. v. Petróleo Brasileiro S.A.
– Petrobras, No. 15-cv-4043, ECF No. 1, ¶¶ 297, 454-62; Amended
Complaint in NN Investment Partners B.V., et al. v. Petróleo
Brasileiro S.A. – Petrobras, et al., No. 15-cv-4226, ECF No. 22,
¶¶ 259, 292, 377-81. Although plaintiffs' complaints do not tie
specific misstatements to specific transactions in securities,
such specificity is not necessary for a § 18 claim to survive a

15

motion to dismiss when the relevant period is so extensive and plaintiffs allege numerical misstatements and their relevance with such particularity. See Maverick Fund, L.D.C. v. Comverse Technology, Inc., 801 F. Supp. 2d 41, 53-54 (E.D.N.Y. 2011). Accordingly, the October 19 Order denied defendants' motion to dismiss plaintiffs' § 18 claims.

Fifth, the October 19 Order denied defendants' motion to dismiss the common law negligent misrepresentation claim of plaintiff Washington State Investment Board ("WSIB"). The parties first disputed what law applies to WISB's claim. This Court applies New York's choice-of-law rules to address this question. See Rogers v. Grimaldi, 875 F.2d 994, 1002 (2d Cir. 1989). In tort actions, New York courts apply an interest analysis, such that "the law of the jurisdiction having the greatest interest in the litigation will be applied." White Plains Coat & Apron Co, Inc. v. Cintas Corp., 460 F.3d 281, 284 (2d Cir. 2006) (citations omitted). "If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." Id. (citation omitted). WISB's negligent misrepresentation claim involves conduct-regulating rules, see Mark Andrew of Palm Beaches, Ltd. v. GMAC Commercial Mortg. Corp., 265 F. Supp. 2d 366, 378 (S.D.N.Y. 2003), and so the

16

Court must look to where the tort occurred to determine what law applies.

Under New York law, "when the defendant's [tortious] conduct occurs in one jurisdiction and the plaintiff's injuries are suffered in another, the place of the wrong . . . is determined by where the plaintiffs' injuries occurred." La Luna Enterprises, Inc. v. CBS Corp., 74 F. Supp. 2d 384, 389 (S.D.N.Y. 1999) (quoting Schultz v. Boy Scouts of America, Inc., 65 N.Y.2d 189, 195 (N.Y. 1985)). Moreover, the Second Circuit has concluded that New York courts would hold that "loss from fraud is deemed to be suffered where its economic impact is felt, normally the plaintiff's residence." Sack v. Low, 478 F.2d 360, 366 (2d Cir. 1973). WISB is headquartered and operates in Washington State. Thus, for purposes of the choice-of-law analysis, the injuries from defendants' alleged tort and the tort itself occurred in Washington State. This conclusion weighs heavily in favor of applying Washington state law to WISB's claim.

However, an interest analysis is meant to be "flexible," and so, this more technical lex loci analysis aside, the Court also considers the interests of New York in the WISB litigation. See Finance One Public Co. Ltd. v. Lehman Bros. Special Financing, Inc., 414 F.3d 325, 337 (2d Cir. 2005). The interests of New York are limited. Defendants are correct that New York

has an interest in regulating its securities exchanges, including the NYSE. Although Petrobras ADSs do trade on the NYSE, defendants themselves point out that, by contrast, the Petrobras Notes are only listed, and do not trade, there. See, e.g., Defendants' Joint Memorandum of Law in Support of Their Motion to Dismiss the Individual Action Complaints at 9-10, No. 14-cv-9662, ECF No. 199. Apart from New York's limited interest as the home of the NYSE, almost all of the alleged conduct relevant to this case took place in Brazil. Accordingly, because the site of the tort was Washington and because New York has only a limited interest in the litigation, the Court concluded that Washington state law applies to WISB's claim.

Defendants argue that WISB has failed to state a claim for negligent misrepresentation under Washington state law. Specifically, defendants argue that WISB failed to allege a special relationship between Petrobras and WISB giving rise to a duty to disclose. The Supreme Court of Washington has held that "[a] court will find a duty to disclose . . . where a seller has knowledge of a material fact not easily discoverable by the buyer, and where there exists a statutory duty to disclose." Colonial Imports, Inc. v. Carlton Northwest, Inc., 121 Wash. 2d 726, 732 (Wash. 1993) (citation omitted). WISB's Complaint alleges that the defendants had knowledge of material facts, including the alleged bribery scheme, that were not easily

18

discoverable by WISB. Moreover, the main thrust of WISB's
Complaint is that the defendants misrepresented or failed to
disclose facts as required by the securities laws of the United
States. Accordingly, WISB has adequately pleaded a special
relationship giving rise to a duty to disclose under Washington
law.

Defendants also argue that WISB failed to meet the
heightened pleading standards of Rule 9(b) by failing to allege
with particularity which defendant made which misrepresentation
or omission, WISB's actual reliance on the misrepresentations,
or any misrepresentation or omission made by an Underwriter
Defendant. With respect to its common law negligent
misrepresentation claim, WISB's Complaint repeats all of WISB's
allegations. See Complaint in Washington State Investment Board
v. Petróleo Brasileiro S.A. – Petrobras, et al., No. 15-cv-3923,
ECF No. 1, ¶ 472. As a whole, WISB's Complaint adequately pleads
specific statements made or authorized by specific defendants,
see, e.g., id. ¶¶ 21-25; WISB's actual reliance, see, e.g., id.
¶¶ 442-46; and also pleads that the Underwriter Defendants
failed to comply with statutory requirements with respect to the
Petrobras Notes, see, e.g., id. ¶¶ 513-24, 528, 541.
Accordingly, WISB has adequately stated a claim to negligent
misrepresentation under Washington state law, and the October 19
Order therefore denied defendants' motion to dismiss.

Sixth, the October 19 Order granted defendants' motion to
dismiss the claims against Theodore Helms arising under Section
15 of the Securities Act in New York City Employees' Retirement
System, et al. v. Petróleo Brasileiro S.A. – Petrobras, et al.,
No. 15-cv-2192; Transamerica Income Shares, Inc., et al. v.
Petróleo Brasileiro S.A. – Petrobras, et al., No. 15-cv-3733;
Ohio Public Employees Retirement System v. Petróleo Brasileiro
S.A. – Petrobras, et al., No. 15-cv-3887; and Washington State
Investment Board v. Petróleo Brasileiro S.A. – Petrobras, et
al., No. 15-cv-3923. To state a claim for § 15 control person
liability, plaintiffs must plead "(1) a primary violation by the
controlled person, (2) control of the primary violator by the
defendant, and (3) that the defendant was, in some meaningful
sense, a culpable participant in the controlled person's fraud."
ATSI Communications, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 108
(2d Cir. 2007) (setting out these elements in the context of a §
20(a) control person claim). Plaintiffs do not allege that Helms
was a director at Petrobras. Instead, they allege he served as
Petrobras's authorized representative in the United States and
ran the Global Investor Relations department in Petrobras's New
York office. See Complaint in New York City Employees'
Retirement System, et al. v. Petróleo Brasileiro S.A. –
Petrobras, et al., No. 15-cv-2192, ECF No. 1, ¶ 42; Complaint in
Transamerica Income Shares, Inc., et al. v. Petróleo Brasileiro

S.A. – Petrobras, et al., No. 15-cv-3733, ECF No. 1, ¶ 69; Ohio

Public Employees Retirement System v. Petróleo Brasileiro S.A. –

Petrobras, et al., No. 15-cv-3887, ECF No. 1, ¶ 430; Complaint

in Washington State Investment Board v. Petróleo Brasileiro S.A.

– Petrobras, et al., No. 15-cv-3923, ECF No. 1, ¶ 42. However,

these allegations do not establish control by Helms of an entity

that committed a primary violation. Plaintiffs argue that Helms

himself committed a primary violation because he allegedly

signed the 2012 Registration Statement. See Complaint in New

York City Employees' Retirement System, et al. v. Petróleo

Brasileiro S.A. – Petrobras, et al., No. 15-cv-2192, ECF No. 1,

¶ 42; Complaint in Transamerica Income Shares, Inc., et al. v.

Petróleo Brasileiro S.A. – Petrobras, et al., No. 15-cv-3733,

ECF No. 1, ¶ 69; Ohio Public Employees Retirement System v.

Petróleo Brasileiro S.A. – Petrobras, et al., No. 15-cv-3887,

ECF No. 1, ¶ 430; Complaint in Washington State Investment Board

v. Petróleo Brasileiro S.A. – Petrobras, et al., No. 15-cv-3923,

ECF No. 1, ¶ 42. But Helms's own alleged primary violation

cannot serve as the basis of a § 15 claim against him. Control

person liability is separate from § 11 liability, and plaintiffs

cannot "double back" so that the same conduct underlies both

claims. See S.E.C. v. Aronson, 2013 WL 4082900 at *9 (S.D.N.Y.

Aug. 6, 2013). Accordingly, the October 19 Order granted

defendants' motion to dismiss plaintiffs' § 15 claims against

Helms. However, the Court granted plaintiffs leave to attempt to more substantially allege Helms's possible control of primary violators.

Seventh, the October 19 Order granted defendants' motion to dismiss claims arising under § 10(b) of the Exchange Act and Illinois's common law of fraud in Central States Southeast and Southwest Areas Pension Fund v. Petróleo Brasileiro S.A. – Petrobras, et al., No. 15-cv-3911; Washington State Investment Board v. Petróleo Brasileiro S.A. – Petrobras, et al., No. 15-cv-3923; and NN Investment Partners B.V., et al. v. Petróleo Brasileiro S.A. – Petrobras, et al., No. 15-cv-4226, on statute of repose grounds. Section 10(b) claims are subject to a five-year statute of repose. 28 U.S.C. § 1658(b)(2). Likewise, a five-year period of repose controls Illinois common law fraud claims concerning the sale of securities. See Klein v. George G. Kerasotes Corp., 500 F.3d 669, 671-74 (7th Cir. 2007). Even if New York law applied to the Illinois common law claim, New York's borrowing statute would import the Illinois limitations period. See N.Y. C.P.L.R. § 202. The Complaints in Central States Southeast and Southwest Areas Pension Fund v. Petróleo Brasileiro S.A. – Petrobras, et al., No. 15-cv-3911, and Washington State Investment Board v. Petróleo Brasileiro S.A. – Petrobras, et al., No. 15-cv-3923, were filed on May 21, 2015; accordingly, the October 19 Order dismissed the § 10(b) and

22

Illinois common law of fraud claims in these cases to the extent such claims covered purchases prior to May 21, 2010. The Complaint in NN Investment Partners B.V., et al. v. Petróleo Brasileiro S.A. – Petrobras, et al., No. 15-cv-4226, was filed on June 2, 2015; accordingly, the October 19 Order dismissed the § 10(b) claim in that case to the extent it covered purchases prior to June 2, 2010.

Eighth, the October 19 Order granted defendants' motion to dismiss plaintiffs' claims arising under § 11 of the Securities Act based on the 2012 Note Offering, on the ground that such claims are barred by the statute of repose. Claims brought under § 11 and § 12(a)(2) are limited by a three-year period of repose. 15 U.S.C. § 77m. Because § 15 liability is derivative, § 15 claims are limited by the same periods of repose as the underlying violation. See Klock v. Lehman Bros. Kuhn Loeb Inc., 584 F. Supp. 210, 216 (S.D.N.Y. 1984). Accordingly, all of plaintiffs' Securities Act claims are limited by a three-year repose period and are hereby dismissed to the extent they are based on offerings or purchases made more than three years before each complaint was filed.[2]

---

[2] The Court's October 19 Order only clearly addressed the Securities Act three-year statute of repose issue with respect to plaintiffs' § 11 claims. To the extent any plaintiffs' § 12(a)(2) or § 15 claims are based on offerings or purchases outside of the three-year repose period, they are also hereby dismissed. Plaintiffs voluntarily stated they were not asserting

Ninth, the October 19 Order granted defendants' motion to dismiss plaintiffs' claims arising under § 18 of the Exchange Act to the extent they were based on purchases made more than three years before each complaint was filed. Section 18 claims are limited by a three-year statute of repose. 15 U.S.C. § 78r.

Tenth, the October 19 Order granted defendants' motion to dismiss plaintiffs' claims arising under § 11 of the Securities Act in New York City Employees' Retirement System, et al. v. Petróleo Brasileiro S.A. – Petrobras, et al., No. 15-cv-2192, and Transamerica Income Shares, Inc., et al. v. Petróleo Brasileiro S.A. – Petrobras, et al., No. 15-cv-3733, to the extent those claims were based on Notes purchases made after August 11, 2014. Reliance on a registration statement is a required element of a § 11 claim when a plaintiff "acquired [a] security after the issuer has made generally available to its security holders an earning statement covering a period of at least twelve months beginning after the effective date of the registration statement." 15 U.S.C. § 77k. This statutory language notwithstanding, plaintiffs argue that Rule 8 does not require them to plead reliance to state a § 11 claim based on purchases made after the release of an earning statement covering the twelve months following a registration. But this is

_____

any claims outside of the applicable statutes of repose. P. Opp. at 2 n.1, No. 14-cv-9662, ECF No. 213.

not matter of notice pleading: 15 U.S.C. § 77k makes reliance an element of a prima facie § 11 claim in such circumstances. Plaintiffs do not deny that Petrobras issued an applicable earning statement on August 11, 2014. Accordingly, plaintiffs must plead reliance to state a § 11 claim based on purchases after that date.

Plaintiffs argue that they did allege reliance on earlier registration documents. See Complaint in New York City Employees' Retirement System, et al. v. Petróleo Brasileiro S.A. – Petrobras, et al., No. 15-cv-2192, ECF No. 1, ¶¶ 211, 284; Complaint in Transamerica Income Shares, Inc., et al. v. Petróleo Brasileiro S.A. – Petrobras, et al., No. 15-cv-3733, ECF No. 1, ¶¶ 275, 350. However, plaintiffs' Complaints expressly do not incorporate the relevant reliance allegations into their § 11 causes of action. See Complaint in New York City Employees' Retirement System, et al. v. Petróleo Brasileiro S.A. – Petrobras, et al., No. 15-cv-2192, ECF No. 1, ¶¶ 319 (excluding ¶ 284 when repeating and realleging allegations); Complaint in Transamerica Income Shares, Inc., et al. v. Petróleo Brasileiro S.A. – Petrobras, et al., No. 15-cv-3733, ECF No. 1, ¶¶ 390 (excluding ¶ 350 when repeating and realleging allegations). Accordingly, plaintiffs have failed to adequately plead reliance; and the October 19 Order therefore dismissed

25

their § 11 claims to the extent they were based on purchases after August 11, 2014.

Eleventh, the October 19 Order granted defendants' motion to dismiss the state law claim in Central States Southeast and Southwest Areas Pension Fund v. Petróleo Brasileiro S.A. – Petrobras, et al., No. 15-cv-3911, on the ground that this claim was precluded by the Securities Litigation Uniform Standards Act ("SLUSA"). SLUSA precludes any case that "(1) is a "covered" class action (2) based on state statutory or common law that (3) alleges that defendants made a 'misrepresentation or omission of a material fact' or 'used or employed any manipulative device or contrivance in connection with the purchase or sale' (4) of a covered security." Romano v. Kazacos, 609 F.3d 512, 518 (2d Cir. 2010) (quoting 15 U.S.C. § 78bb(f)). "Covered" class actions include "(ii) any group of lawsuits filed in or pending in the same court and involving common questions of law or fact, in which— (I) damages are sought on behalf of more than 50 persons; and (II) the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose." Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 83 n.8 (2006) (quoting 15 U.S.C. § 78bb(f)(5)(B)). Plaintiffs do not dispute defendants' arguments that SLUSA covers the Central States state common law fraud claim. P. Opp. at 22 n.22, No. 14-cv-9662, ECF No. 213. The Court agrees that the claim, on its face, falls

26

under SLUSA. Accordingly, the October 19 Order granted defendants' motion to dismiss the state law claim in <u>Central States Southeast and Southwest Areas Pension Fund v. Petróleo Brasileiro S.A. - Petrobras, et al.</u>, No. 15-cv-3911.[3]

<u>Twelfth</u>, the October 19 Order granted the defendants' motion to dismiss plaintiffs' Brazilian law claims. Plaintiffs voluntarily represented to the Court that they no longer sought to assert such claims. <u>See</u> P. Opp. at 2 n.1, No. 14-cv-9662, ECF No. 213.

For the foregoing reasons, the Court hereby reaffirms its October 19 Order and adds the additional rulings set forth herein.

Dated:   New York, NY
         January 4, 2016                    JED S. RAKOFF, U.S.D.J.

---

[3] The Court did not reach defendants' SLUSA arguments with respect to the Brazilian law claims because plaintiffs represented to the Court that they no longer wished to assert Brazilian law claims and answered defendants' SLUSA arguments solely for appeal purposes. <u>See</u> P. Opp. at 2 n.1, 22 n.23, No. 14-cv-9662, ECF No. 213. Similarly, the Court did not reach defendants' SLUSA arguments with respect to the state law claim in <u>NN Investment Partners B.V., et al. v. Petróleo Brasileiro S.A. - Petrobras, et al.</u>, No. 15-cv-4226, because the <u>NN Investment Partners</u> plaintiffs amended their Complaint to withdraw their state law claims. <u>See</u> Amended Complaint in <u>NN Investment Partners B.V., et al. v. Petróleo Brasileiro S.A. - Petrobras, et al.</u>, No. 15-cv-4226, ECF No. 22.